UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRADLEY C. SMITH, a single man,

    Plaintiff,

    v.

GRAYS HARBOR COUNTY, a municipality;
GRAYS HARBOR DRUG TASK FORCE;
MICHAEL J. WHELAN, in his individual and
official capacities; DAVID A. PIMENTEL, in
his individual and official capacities; CHRIS
RATHBUN, in his individual and official
capacities; KEITH PETERSON, in his
individual and official capacities; GARY
PARFITT, in his individual and official
capacities; et al,

    Defendants.

Case No. C05-5090RBL

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

## I. SUMMARY

This matter is before the court on the Defendants' Motion for Summary Judgment [Dkt. #32].

The case involves the acquisition and execution of a search warrant on June 12, 2003, bringing about the arrest, detention and prosecution of plaintiff Bradley C. Smith ("Smith"). The specific details of the event depend on the perspectives of the parties. Plaintiff alleges that

ORDER- 1

Defendants, individually and in concert, unlawfully obtained and executed a search warrant in violation of his Fourth Amendment rights.

On or about June 11, 2003 Deputy Gary Parfitt ("Parfitt") completed an Affidavit for Search Warrant. Declaration of Gary Parfitt, pp. 1-2 ("Parfitt Decl.") [Dkt. #34]. Based upon Parfitt's affidavit a search warrant was issued for the following:

> "A small travel trailer and outbuildings located at 30 Porter Creek Road, Elma, Washington, this being the premises of a wrecking yard. The travel trailer is the residence of Terry. L. "Bub" Fournier, and also the person of Terry L. Fournier, dob: 09-13-65, 110 pounds, green eyes, and brown hair."

Declaration of David A. Pimentel, Exh. 1 ("Pimentel Decl.") [Dkt. #36].

The Search Warrant authorized the seizure of the following property:

> "A Honda 1000 watt gas generator, serial No. E2GA-108820, and controlled substances, specifically methamphetamine, packaging materials such as plastic bags and scales."

Pimentel Decl., Exh. 1 [Dkt. #36].

On June 12, 2003, prior to executing the search warrant, officers participated in a briefing during which they all received a copy of the warrant. Pimentel Decl., p. 2 [Dkt. #36]. The possibility that Smith and an individual by the name of Rebecca Haddock ("Haddock") could be located within a building known as the "Old School House" at 30 Porter Creek Road was discussed at the briefing. Declaration of Harold Karlsvik, pp. 8-11 ("Karlsvik Decl.") [Dkt. #26]. Deputy David A. Pimentel ("Pimentel") has known since the early 1980s that the "Old School House" was used as a residence. Karlsvik Decl., pp. 9-10 [Dkt. #26]. Prior to executing the search warrant, Pimentel was aware that Smith and Haddock were living in the "Old School House." *Id*., pp. 9-11; Exh. 2 [Dkt. #26].

During the execution of the search warrant Parfitt was assigned to search the main residence. Parfitt Decl., p. 2 [Dkt. #34]. He did not enter the "Old School House." *Id*. [Dkt. #34]. Pimentel,

ORDER- 2

Detective Chris Rathbun ("Rathbun") and Detective Keith Peterson ("Peterson") were assigned to search the "Old School House." Pimentel Decl., p. 2 [Dkt. #36]. Three individuals, including Smith, were located inside the "Old School House." According to Smith, he was "paraded outside in [his] underwear in front of the departing congregation of the church across the street"[1]. Declaration of Bradley C. Smith, p. 2 ("Smith Decl.") [Dkt. #27]. During a search of the "Old School House," methamphetamine and equipment used to manufacture methamphetamine were discovered. Declaration of Keith Peterson, Exhibits 5-8 ("Peterson Decl.") [Dkt. #37]. Smith was found within arms reach of the methamphetamine. Pimentel Decl., pp. 2-3 [Dkt. #36]. Smith was arrested for possession of methamphetamine. *Id*. [Dkt. #36].

In the subsequent criminal proceedings Smith filed a motion to suppress the evidence found during the search. Karlsvik Decl., p. 1 [Dkt. #26]. The motion was granted based on the determination that Smith was using the "Old School House" as a residence, and as such it could not be considered an "outbuilding" within the language of the warrant. *Id*., Exh. 1, pp. 26-28 [Dkt. #26].

This action followed. Plaintiff asserts the following claims: unreasonable search and seizure in violation of 42 U.S.C. § 1983; unlawful arrest, detention and imprisonment in violation of 42 U.S.C. §1983; and false arrest, battery[2], false imprisonment and malicious prosecution in violation of Washington state law [Dkt. #1].

All Defendants have moved for summary judgment. Parfitt asserts entitlement to qualified immunity for obtaining the search warrant. Pimentel, Peterson and Rathbun assert entitlement to

---

[1] Although resolution of this factual dispute is not necessary for the Court's ruling here today, it is noted that Plaintiff's assertion is undermined by the deposition of Ladena Freeman, the property owner, who recalled seeing Plaintiff wearing pants. Second Declaration of John E. Justice, Exh. 1, pp. 21-22 [Dkt. #42].

[2] It is unclear to the Court whether Defendants intended to include Plaintiff's state law battery claim as a part of their motion for summary judgment. The Court is also unclear as to whether Plaintiff intends to pursue the battery claim.

ORDER- 3

qualified immunity for assisting in the execution of the search warrant.  Additionally, Pimentel, Peterson and Rathbun argue that Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution are defeated by probable cause.  Grays Harbor County seeks judgment as a matter of law in light of Plaintiff's failure to identify a policy or custom of Grays Harbor County that caused his alleged Constitutional deprivations.  The Grays Harbor Drug Task Force argues that it is not a separate legal entity capable of being sued.  Finally, Sheriff Michael J. Whelan seeks dismissal due to Plaintiff's failure to state a claim.

## II. SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## III. DISCUSSION

**A.      Gary Parfitt's Motion for Summary Judgment.**

Defendant Parfitt seeks summary dismissal of all of Plaintiff's claims, arguing that his actions in acquiring the search warrant are entitled to qualified immunity.

Defendants in a §1983 action are entitled to qualified immunity from damages for civil

ORDER- 4

liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable officer could believe his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993). However, "if a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, then that case must proceed to trial." *Id*. at 873.

In analyzing a qualified immunity defense, the Court must first determine (1) whether a Constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). If a violation of a Constitutional right is found, the Court must then ask (2) whether the right was clearly established when viewed in the specific context of the case. *Id*. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is "an immunity from suit rather than a mere defense to liability, and like absolute liability, it is effectively lost if a case is erroneously permitted to go to trial." *Id*., *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Although qualified immunity serves to protect officials from suit, "where the facts are disputed, their resolution and determinations of credibility are 'manifestly the province of the jury.'" *Wall v. County of Orange*, 364 F.3d 1107, 1110 (9th Cir. 2004), *quoting Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002).

In asserting his entitlement to qualified immunity, Parfitt relies on *Malley v. Briggs*, 475 U.S. 335 (1986). *Malley* stands in part for the proposition that an officer who obtains a search warrant is entitled to qualified immunity unless "the warrant application is so lacking in indicia of probable

ORDER- 5

cause as to render official belief in its existence unreasonable... ." *Id*. at 344-45. The Court finds the present case more analogous to the situation presented in *Navarro v. Barthel*, 952 F.2d 331 (9th Cir. 1991). There the court characterized the issue as involving the "Fourth Amendment right to a warrant describing with sufficient particularity the location to be searched, not as a case involving whether the warrant was validly issued with probable cause." *Id*., at 332.

The particularity requirement is necessary to protect "the right to be free from a search of the wrong place, even when executed pursuant to a warrant." *Id*. at 333; *See also U.S. v. Collins*, 830 F.2d 145 (9th Cir. 1987). Here the question is whether an officer in Parfitt's position "would reasonably have described the location to be searched with sufficient particularity to direct those executing the warrant to the *correct* house." *Id*. at 333 (emphasis in original). "The validity of the warrant must be assessed on the basis of the information the officers disclosed, or had a duty to disclose." *Maryland v. Garrison*, 107 S.Ct. 1013, 1017 (1987). As the officer who procured the warrant, Parfitt likely played an integral role in planning and executing the search at 30 Porter Creek Road. Therefore he had a responsibility to make sure "that they [had] a proper warrant that in fact [authorized] the search and seizure they [were] about to conduct." *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002).

In this case, facts necessary to decide the issue of qualified immunity are in dispute. On Plaintiff's version of the facts, a reasonable officer in Parfitt's position, knowing that the "Old School House" was used as a residence, would have included such information in an affidavit for a search warrant. Parfitt was aware that 30 Porter Creek Road had been searched in the past pursuant to search warrants with similar language. Parfitt Decl., p. 2 [Dkt. #34]. Being familiar with 30 Porter Creek Road, a reasonable officer in Parfitt's position would have identified multiple residences located at that address, including the "Old School House" and the Freeman residence. Furthermore, Parfitt could have easily learned from his fellow law enforcement officers that the "Old School House" had served as a residence since the early 1980's. Karlsvik Decl., pp. 8-11 [Dkt. #26].

ORDER- 6

Armed with this knowledge, Parfitt had a duty to disclose to the magistrate as much information as he had available to him in order to satisfy the particularity requirement. Viewing the facts in the light most favorable to Plaintiff, Parfitt's acquisition of the search warrant was done in violation of Plaintiff's Fourth Amendment right to a search warrant describing with particularity the location to be searched.

The second inquiry for qualified immunity purposes is whether, at the time Parfitt obtained the search warrant, it was "clearly established" that he was violating Plaintiff's Fourth Amendment rights. *See Saucier*, supra. In other words, were the "contours of the right...sufficiently clear that a reasonable official would understand that what he is doing violates that right"? *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Court believes that Plaintiff's Fourth Amendment right to a search warrant describing with particularity the location to be searched was "clearly established" on June 12, 2003. "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison* 107 S.Ct. at 1016. While the court is aware of and agrees with the reasons for qualified immunity, for the reasons discussed above, Defendant Parfitt's Motion for Summary Judgment on qualified immunity is DENIED [Dkt. # 32].

**B.     David A. Pimentel, Keith Peterson and Chris Rathbuns' Motion for Summary Judgment.**

Defendants Pimentel, Peterson and Rathbun seek summary dismissal of all of Plaintiff's claims, arguing that their actions are entitled to qualified immunity. As to Plaintiff's §1983 claims, they argue that their search of the "Old School House" was based on a reasonable interpretation of a facially valid warrant. Alternatively, they claim that there was probable cause under the warrant to search the "Old School House." They also argue that proof of probable cause defeats Plaintiff's state law claims for false arrest, false imprisonment and malicious prosecution.

ORDER- 7

As to the assertion of qualified immunity from Plaintiff's §1983 claims, the court must first inquire whether (viewed in the light most favorable to the Plaintiff) the facts show that the officers' conduct violated a Constitutional right. The Fourth Amendment protects the right to be secure in the home from unreasonable searches and seizures by prohibiting officers from making a warrantless entry into a home absent probable cause and exigent circumstances. *Payton v. New York*, 445 U.S. 573, 590 (1980); *United States v. Prescott*, 581 F.2d 1343, 1350 (9th Cir. 1978).

Pimentel, Peterson and Rathbun argue that officers such as themselves who assist in the execution of a warrant "generally [have] qualified immunity for conducting an unconstitutional search if...acting on the basis of a facially valid warrant." *Barlow v. Ground*, 943 F.2d 1132, 1139 (9th Cir. 1991). Plaintiff does not argue the facial validity of the warrant as to the person of Terry "Bub" Fournier and his "small travel trailer and outbuildings." The question presented is whether a reasonable officer would have read the warrant as permitting a search of the "Old School House."

As a preliminary matter to this inquiry, Plaintiff asserts a collateral estoppel bar to the question presented. Plaintiff bases this assertion on the prior determination of the Grays Harbor County Superior Court Judge in the criminal case that the "Old School House" did not fall within the definition of an outbuilding of the small travel trailer. However, the doctrine of collateral estoppel will only apply where three conditions are met, the first of which requires that "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated." *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005). The Court agrees with Defendants' position that the precise issue in the present case is not identical to the issue at the criminal proceeding. There the judge considered whether the "Old School House" fell within the court's definition of an outbuilding. The qualified immunity analysis at issue here differs by asking whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Having determined that the first condition for the application of collateral estoppel is lacking, the Court will not proceed to an analysis of the remaining conditions. Collateral estoppel does not bar this Court from

ORDER- 8

considering the issue.

Returning to the question of whether a Constitutional violation was committed, (viewing the facts in the light most favorable to Plaintiff) the Court must determine if a reasonable officer would have read the warrant as permitting a search of the "Old School House." The warrant does not expressly mention Smith or the "Old School House." Pimentel has been aware since the early 1980's that the "Old School House" was used as a residence. Karslvik Decl., pp. 9-10 [Dkt. #26]. Furthermore, Pimentel was aware that Smith and Haddock currently resided in the "Old School House." *Id.* at pp.10-11 [Dkt. #26]. Prior to the execution of the search warrant, Pimentel, Peterson and Rathbun were present at a briefing during which the presence of Smith and Haddock inside the "Old School House" was discussed. *Id.* Pp. 8-11 [Dkt. #26].

According to Plaintiff, there were a number of indicators that the "Old School House" was used as a residence. Those indicators included a mail box, electric meter box, pet dishes, curtains in the windows and a front door mat. Smith Decl., p. 2 [Dkt. #27]. Plaintiff argues that even if the officers mistook the "Old School House" for an outbuilding of the travel trailer, their mistake would have been apparent as soon as they entered the structure and saw furnishings typical of a residence. Among the items contained within the "Old School House" were a couch, lazy boy chair, fireplace, television, stereo, pictures on the wall and beds in two separate bedrooms. Smith Decl., p. 2 [Dkt. #27]. Viewing the interior of the "Old School House" should have put the officers on notice that they were in a residence and not an outbuilding to a travel trailer, at which point "they were required to discontinue the search." *Maryland v. Garrison* S.Ct. at 1018.

Adopting the facts as alleged by Plaintiff, Defendants Pimentel, Peterson and Rathbun were all aware that Smith and Haddock resided in the "Old School House" prior to the search. Knowing that the "Old School House" was a separate residence, a reasonable officer would not have conducted a search of that structure under a warrant authorizing a search of "[a] small travel trailer and outbuildings... ."

ORDER- 9

These facts support Plaintiff's claim that the actions of Pimentel, Peterson and Rathbun were in violation of his Fourth Amendment right to be secure in his home from unlawful search and seizure.

Alternatively, Pimentel, Peterson and Rathbun argue that there was probable cause to search the "Old School House," regardless of whether it should have been considered a separate residence. In making this assertion, Defendants rely on cases from the Seventh and Third Circuits standing for the proposition that a single warrant can permit a multi-dwelling search when the individual who is the target of the search has access to or control of the entire **building or structure**. *See United States v. Johnson*, 26 F.3d 669, 694 (7th Cir. 1994); *Torres v. United States*, 200 F.3d 179, 187 (3rd Cir. 1999) (emphasis added). The current case is distinguishable from those cited by the Defendants. In those cases officers executed warrants within a single building only to discover that there was in fact more than one dwelling within the single building. In the present case, the travel trailer was clearly a separate structure from the "Old School House."

Defendants point out that the affidavit used to secure the warrant explained that Fournier had been seen "having access to the other buildings." Defendant's assertion that this provided probable cause to search the "Old School House" is not well taken in light of their knowledge that Smith resided therein. It is clear under *United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983) that "where two residences are located on a single parcel of property, there must be cause to search each unit." *Id.* at 1008; *See also United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980). Under *United States v. Gillman*, 684 F.2d 616, 618 (9th Cir. 1982), "a warrant may authorize a search of an entire street address while reciting probable cause as to only a portion of the premises if they are occupied in common rather than individually, ... if [Fournier] was in control of the whole premises, or if the entire premises are suspect." *Whitten* at 1008. As with the Seventh and Third Circuit cases cited by Defendants, the Court sees the *Gillman* ruling as applying to multiunit structures. The *Gillman* holding expressly states that the language quoted above provides an exception to the "general rule

ORDER- 10

voiding the warrant for an undisclosed **multiunit structure**." *Gillman* at 618 (emphasis added); *See also United States v. Hinton*, 219 F.2d 324 (7th Cir. 1955).

As previously stated, the Court cannot say as a matter of law that a reasonable officer, armed with the knowledge that the "Old School House" was in fact serving as a residence, would have cause to search the "Old School House" under the search warrant in question.

These facts support the claim that the actions of Pimentel, Peterson and Rathbun were in violation of Plaintiff's Fourth Amendment right to be secure in his home from unlawful search and seizure.

The second inquiry for qualified immunity purposes is whether, at the time of the officers actions, it was "clearly established" that they were violating Plaintiff's Fourth Amendment rights. *See Saucier*, supra. The Fourth Amendment guarantees Plaintiff's right to be secure against unreasonable searches and seizures. For the reasons stated above, "it would be clear to a reasonable officer that his conduct was unlawful in the situation...confronted" by Pimentel, Peterson and Rathbun. *Saucier* at 2156. The Court cannot rule as a matter of law that a reasonable officer, informed that the "Old School House" was being used as a residence, would be justified in conducting a search of that building under the language of the warrant. On the facts presented, the issue is one for the jury. The Motion for Summary Judgment by Defendants Pimentel, Peterson and Rathbun on the issue of qualified immunity from Plaintiff's §1983 claims is therefore DENIED [Dkt. #32].

As previously stated, Defendants Pimentel, Peterson and Rathbun argue that proof of probable cause defeats Plaintiff's claims of false arrest, false imprisonment and malicious prosecution. Defendants base this argument on the fact that Plaintiff was found within arms reach of methamphetamine in a room inside the "Old School House." Therefore, the officers argue, there was probable cause to arrest Plaintiff.

Defendants' argument is not well taken in light of the Court's determination that the search

ORDER- 11

of the "Old School House" was not legally authorized as a matter of law. Defendants' argument that probable cause existed to arrest Plaintiff is based on evidence obtained during the search of the "Old School House." Evidence obtained in the course of an unlawful search cannot form the basis of probable cause for an arrest. *See Murray v. United States*, 487 U.S. 533, 540 (1988); *Alderman v. United States*, 394 U.S. 165, 177 (1969); *Wong Sun v. United States*, 371 U.S. 471 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). Absent the evidence gathered during the search of the "Old School House," Pimentel, Peterson and Rathbun could not have reasonably "concluded that there was a fair probability that [Smith] had committed a crime." *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991), *quoting*, *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). Defendants Pimentel, Peterson and Rathbuns' Motion for Summary Judgment on this issue is DENIED [Dkt. #32].

**C.      Grays Harbor County's Motion for Summary Judgement.**

Defendant Grays Harbor County next seeks dismissal as a defendant in this case under *Monell v. N.Y. City Dep't of Soc. Services*, 436 U.S. 658 (1978). To establish liability against a local government under §1983, Smith must identify an official government policy or custom which was responsible for his Constitutional deprivations. *Id*. at 694. Plaintiff's complaint asserts no such policy or custom, nor does he respond on this point in his memorandum opposing summary judgment. Defendant Grays Harbor County's Motion for Summary Judgment is GRANTED, and all claims against Grays Harbor County are DISMISSED [Dkt. #32].

**D.      Grays Harbor Drug Task Force's Motion for Summary Judgment.**

Defendant Grays Harbor Drug Task Force ("Task Force") next seeks dismissal as a defendant, arguing that it is not a separate legal entity capable of being sued. The Task Force argues that their operating agreement does not evidence the necessary intent to create a separate legal entity required of an intergovernmental association under *Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995). An analysis of the Interlocal Agreement establishing the Task Force produces no evidence of

ORDER- 12

1 an intent to create a separate legal entity.  See Declaration of John E. Justice, Exh. 5.  Furthermore, Plaintiff does not respond on this point.  Accordingly, Defendant Grays Harbor Drug Task Force's Motion for Summary Judgment is GRANTED, and all claims against Grays Harbor Drug Task Force are DISMISSED [Dkt. #32].

### E. Michael J. Whelan's Motion for Summary Judgment.

Finally, Defendant Michael J. Whelan ("Whelan") seeks summary dismissal of all of Plaintiff's claims.  Whelan argues that Plaintiff has failed to establish a basis for liability against him as a supervisor.  *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) states that such liability exists only where the supervisor was "personally involved in the constitutional deprivation or a sufficient casual connection exists between the supervisor's unlawful conduct and the constitutional violation."  *Id*. at 653.  Whelan argues that Plaintiff has failed to provide evidence that he participated in or was connected to the alleged constitutional violations.  The Court agrees, and acknowledges that Plaintiff does not respond on this point.  Defendant Whelan's Motion for Summary Judgment is GRANTED, and all claims against Whelan are DISMISSED [Dkt. #32].

IT IS SO ORDERED.

DATED this 17th day of January, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER- 13